UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

                    Plaintiff,

      -against-

DEON MORGAN,

                    Defendant.

No. 15-cr-464 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

By motion dated January 25, 2016 (ECF No. 12, or the "Motion"), Defendant Deon

Morgan seeks suppression of a firearm seized on April 29, 2015 (the "Firearm"); statements

made to law enforcement agents on April 29, 2015 (the "April 29 Statements"); and statements

made to law enforcement agents on or about July 27-28, 2015 (the "July 27-28 Statements").

Morgan also seeks an order compelling the Government to fulfill its disclosure obligations under

*Brady v. Maryland*, 373 U.S. 83 (1963) ("*Brady*"), *Giglio v. United States*, 405 U.S. 150 (1972)

("*Giglio*"), and Federal Rule of Evidence 404(b).  For the reasons that follow, the motion is

DENIED.

## ALLEGED FACTS

The following facts are taken from the Declaration of Deon Morgan, dated January 25,

2016 (ECF No. 14, or the "Morgan Declaration").  The Government indicates in its opposition

brief that, for the purposes of the instant motion, it accepts the relevant facts as set forth in the

Morgan Declaration.  (The Government's Memorandum of Law in Opposition to Defendant's

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3|18|2016

Motion to Suppress Evidence ("Gov't Opp.") at 1.)[1]

In April 2015, Morgan befriended Officer Gorr at a local gym.  (Morgan Decl., ¶ 2.)  One day, Officer Gorr called Morgan and requested help locating the address of an individual whom Officer Gorr believed was friends with Morgan.  (*Id*. ¶ 3.)  Morgan did not know where the individual lived but volunteered to try to find out the address.  (*Id*.)  Several days later, Morgan received a phone call from Officer Dymond[2] who stated that he was friends with Officer Gorr.  (*Id*. ¶ 4.)  Officer Dymond told Morgan that he was aware that Morgan had provided assistance to Officer Gorr and further stated that he needed help with something, which he requested to discuss in person.  (*Id*.)  Morgan agreed to meet Officer Dymond, and when he arrived at the agreed upon location, Officer Dymond was there with a female—both dressed in plain clothes.  (*Id*.)  Morgan realized that he recognized Officer Dymond.  (*Id*.)

Officer Dymond was looking for information regarding guns on the street.  (*Id*. ¶ 5.)  Officer Dymond promised Morgan that he would not be arrested or prosecuted for any information he provided.  (*Id*.)  Morgan agreed to "make some phone calls" about guns and call Officer Dymond back with any information he gathered.  (*Id*.)

After making several phone calls, Morgan acquired information about a gun located in a dumpster.  (*Id*. ¶ 6.)  Morgan provided the location of the gun to Officer Dymond, who recovered the gun from the dumpster.  (*Id*.)  Thereafter, Officer Dymond called to thank Morgan and reassured him "not to worry."  (*Id*.)  Morgan asserts that "but for [his] relationship with Officer Gorr, and the promise that [he] would not be arrested or prosecuted," he would not have

---

[1] However, the Government's opposition brief includes a recitation of the facts that differs from the facts outlined in the Morgan Declaration.  (*See* The Government's Memorandum of Law in Opposition to Defendant's Motion to Suppress Evidence ("Gov't Opp.") at 1–4.)

[2] New York State Trooper Timothy Dymond is incorrectly identified as Officer Diamond in Defendant's papers.

provided assistance to Officer Dymond.  (*Id.*)

On July 27, 2015, Officer Gorr called Morgan and requested Morgan's help in identifying an individual.  (*Id.* ¶ 7.)  Officer Gorr asked Morgan to meet him at a Home Depot. (*Id.*)  Morgan met Officer Gorr at the Home Depot, and Officer Gorr requested that Morgan get in his car because the individual in question was at Walmart.  (*Id.* ¶ 8.)  Another individual, whom Morgan later learned was Detective Agata, was also in Officer Gorr's vehicle in plain clothes.  (*Id.*)  Officer Gorr drove to a dead end street, where Officer Will Young and a woman later identified as an FBI agent were located.  (*Id.*)

Morgan asked Officer Gorr for the picture of the individual, but Officer Gorr told Morgan he had lied.  (*Id.* ¶ 9.)  Officer Young informed Morgan that there was a federal warrant for Morgan's arrest and that he was there to execute the warrant.  (*Id.*)  Morgan was told he was under arrest and leg shackles were placed around his ankles.  (*Id.*)  The officers asked Morgan a series of questions regarding his involvement in drug sales.  (*Id.* ¶ 10.)  Morgan informed the officers that he knew someone who sold large quantities of marijuana.  (*Id.*)  At the direction of the officers, Morgan called that individual with a recording device in his ear.  (*Id.*)  Morgan also was questioned about his knowledge of individuals with guns.  (*Id.* ¶ 11.)  Morgan was not asked about the gun retrieved from the dumpster, and he made no statements about that gun.  (*Id.*)  The officers retrieved a second gun located at another residence.  (*Id.*)  Morgan was never informed that he had been indicted; that he had a right to counsel before answering questions; and was never provided *Miranda* warnings, either oral or written.  (*Id.*)  The first time Morgan was informed of his right to remain silent was by a judge during his arraignment on July 28, 2015. (*Id.*)

When Morgan arrived at the police station on July 27, 2015, he was searched and his cell

phone, keys, wallet, and money were seized.  (*Id.* ¶ 12.)  Morgan was told the police had a search warrant for his home and that his "girl would lose her section 8 housing and [his] son would go into foster care."  (*Id.*)  Morgan was informed that it would be easier for him to consent to the search rather than have the police "'bust' the door down."  (*Id.*)  Morgan asked to read the consent form before signing it but was told that it was not necessary since it was a simple consent form.  (*Id.*)  Morgan signed all of the forms, was not given *Miranda* warnings, and did not sign a waiver of his *Miranda* rights.  (*Id.*)

## DISCUSSION

## I.      Motion to Suppress & For a Suppression Hearing

"A defendant who seeks to suppress evidence bears the burden of showing that disputed issues of material fact exist before an evidentiary hearing is required."  *United States v. Castellano*, 610 F. Supp. 1359, 1439 (S.D.N.Y. 1985) (citing *United States v. Culotta*, 413 F.2d 1343, 1345 (2d Cir. 1969) (district court "not required as a matter of law to hold an evidentiary hearing if appellant's moving papers did not state sufficient facts which, if proven, would have required the granting of the relief requested by appellant"), *cert. denied,* 396 U.S. 1019, 90 S.Ct. 586, 24 L.Ed.2d 510 (1970)).  The Second Circuit, and this Court, have long held that to meet this burden, a defendant must submit an affidavit from someone with personal knowledge of the facts.  *See, e.g.*, *United States v. Gillette*, 383 F.2d 843, 848 (2d Cir. 1967) ("The affidavit submitted for appellant is insufficient in that it does not, for example, allege personal knowledge on the part of [the affiant].").  "[A]n evidentiary hearing need not be held where 'a defendant's allegations are general and conclusory or are based upon suspicion and conjecture.'"  *United States v. Wallace*, No. 97-cr-975 (RWS), 1998 WL 401534, at *9 (S.D.N.Y. July 17, 1998) (quoting *United States v. Castellano*, 610 F. Supp. 1359, 1439 (2d Cir. 1985)).

4

### A. Suppression of the Firearm and the April 29 Statements

Defendant contends that suppression of the Firearm and the April 29 Statements is warranted because the evidence was obtained in violation of his Sixth Amendment right to counsel, due process rights, and New York Criminal Procedure §60.45(2)(b)(i)(ii). (Memorandum of Law in Support of Pretrial Motions for Defendant Deon Morgan ("Def.'s Mot.") at 6–8.)

First, neither the Firearm nor the April 29 Statements violate Morgan's Sixth Amendment right because at the time he volunteered the location of the Firearm and made those statements, he had not yet been indicted.[3]  "The Sixth Amendment right to counsel attaches 'at the initiation of adversary judicial proceedings,' such as arraignment or filing of an indictment."  *United States v. Edwards*, 342 F.3d 168, 182 (2d Cir. 2003) (quoting *United States v. Yousef,* 327 F.3d 56, 140 (2d Cir. 2003) (per curiam) (quoting *United States v. Gouveia,* 467 U.S. 180, 188 (1984))).  *See also United States v. Richardson*, 837 F. Supp. 570, 573 (S.D.N.Y. 1993) ("It is well established that the Sixth Amendment right to counsel does not attach until charges have been filed regarding the subject of interrogation.").

Defendant's other primary argument in support of suppression is that the April 29 Statements, including the disclosure of the location of the Firearm, were obtained in conjunction with a grant of immunity, and therefore the Government must demonstrate that the evidence was derived from legitimate, independent sources.  (Def.'s Mot. at 7.)  In support of this argument, Defendant references the Fifth Amendment, the federal witness immunity statute, and New York Criminal Procedure Law § 60.45(2)(b)(1).  The Fifth Amendment privilege against compulsory

---

[3] Defendant was indicted on July 21, 2016.  (Gov't Opp. at 6.)

5

self-incrimination is "coextensive" with the federal witness immunity statute, 18 U.S.C. § 6002.

*Kastigar v. United States*, 406 U.S. 441, 462 (1972).  The Fifth Amendment provides that "[n]o

person shall be compelled in any criminal case to be a witness against himself."  U.S. Const.

amend. V.  Under the federal witness immunity statute,

> whenever a witness refuses, on the basis of his privilege against self-
> incrimination, to testify or provide other information in a proceeding
> before or ancillary to . . . a court or grand jury of the United States . .
> . .and the person presiding over the proceeding communicates to the
> witness an order issued under this title, the witness may not refuse
> to comply with the order on the basis of his privilege against self-
> incrimination; but no testimony or other information compelled
> under the order (or any information directly or indirectly derived
> from such testimony or other information) may be used against the
> witness in any criminal case, except a prosecution for perjury, giving
> a false statement, or otherwise failing to comply with the order.

18 U.S.C. § 6002.  Finally, New York Criminal Procedure Law § 60.45(2)(b)(1) provides that

"[e]vidence of a written or oral confession, admission, or other statement made by a defendant

with respect to his participation or lack of participation in the offense charged, may not be

received in evidence against him in a criminal proceeding if such statement was involuntarily

made."

Defendant's entire immunity argument is misplaced.  Both the statutes and case law

Defendant cites concern situations in which there was an actual grant of immunity.  Here,

however, Defendant has not alleged, and the Government expressly disavows, the existence of an

order of immunity.

Even if Defendant were to make the argument that Officer Dymond's informal

reassurance that Morgan need not worry about providing him information about the location of

the Firearm was deceptive and rendered his statements involuntary—which he does not—the

facts set forth in the Morgan Declaration do not establish "that the conduct of 'law enforcement

officers was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined.'" *Delesine v. Conway*, 755 F. Supp. 2d 487, 501 (S.D.N.Y. 2010) (quoting *Rogers v. Richmond*, 365 U.S. 534, 544 (1961)). "To determine voluntariness, a court should look to the totality of the circumstances in which the confession was given." *Delesine*, 755 F. Supp. 2d at 501 (citing *Arizona v. Fulminante,* 499 U.S. 279, 282–89 (1991)). Defendant's own version of the facts evidences that the April 29 Statements were voluntary. Officer Dymond approached Morgan for assistance, Morgan voluntarily agreed to provide that assistance, and, as the Government points out, Morgan was not even in the presence of law enforcement personnel when he told Officer Dymond about the location of the Firearm. (*See* Gov't Opp. at 8.) Moreover, Officer Dymond's use of deception does not render Defendant's statements involuntary. *See Gibson v. Phillips*, 420 F. Supp. 2d 327, 335 (S.D.N.Y. 2006) *aff'd*, 263 F. App'x 78 (2d Cir. 2008) ("Police deceptions are permissible unless they threaten to compel untruthful statements from a suspect."). Accordingly, the Court denies Defendant's motion to suppress the Firearm and the April 29 Statements.

### B.  Suppression of July 27-28 Statements

Defendant next asserts that this Court should suppress the July 27-28 Statements on the basis that he had not waived his Sixth Amendment right to counsel. (Def.'s Mot. at 8–11.) Unlike the April 29 Statements, the July 27-28 Statements occurred post-indictment, at which time Defendant's Sixth Amendment right attached. However, the Government contends that because the July 27-28 Statements did not concern the offense for which Defendant was indicted, and in light of the "offense specific" nature of the Sixth Amendment, suppression is unwarranted. (Gov't Mot. at 10–11.)

The Second Circuit is clear that "the government does not violate the Sixth Amendment

7

rights of a defendant charged with a crime by investigating or interrogating that defendant with regard to a separate crime that has not been charged." *United States v. Jacques*, 684 F.3d 324, 331 (2d Cir. 2012) (citing *Maine v. Moulton*, 474 U.S. 159, 180 (1985)). "This is true even where the latter crime is factually related to a charged offense . . . ." *Id.* (internal quotation and citation omitted).

Here, Defendant was charged with a violation of 18 U.S.C. § 922(g) in relation to his possession of a firearm after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year. The July 27-28 Statements, which Defendant seeks to suppress, concern his knowledge of individuals involved in drug sales and the location of a second gun. (Morgan Decl. ¶ 10–11.) Consequently, Defendant's Sixth Amendment rights were not violated when he made the July 27-28 Statements because they do not concern the charged offense. Morgan himself states that he was neither asked about nor made statements concerning the Firearm. (*Id.* ¶ 11.) Furthermore, the Government has averred that to the extent any part of the July 27-28 Statements concerned the Firearm, the Government does not seek to admit those statements as evidence against Morgan. (Gov't Opp. at 11.) The Court denies Defendant's motion to suppress the July 27-28 Statements.

## II.    Additional Requested Relief

Defendant's motion also seeks to compel the disclosure of *Brady*/*Giglio* material and the Government's anticipated Rule 404(b) evidence. (Def.'s Mot. at 12-15.) The Government has represented that it will "timely comply with all of its disclosure obligations." (Gov't Opp. at 11.) As there is no dispute at this juncture for the Court to resolve, Defendant's motion is premature and therefore denied without prejudice to renew should the Government not timely comply with its disclosure obligations.

## CONCLUSION

For the foregoing reasons, the Defendant's motion to suppress the Firearm, April 29 Statements, and July 27-28 Statements is DENIED.  Additionally, the Court DENIES without prejudice the Defendant's motion to compel the Government to comply with its disclosure obligations.  The Clerk of Court is respectfully requested to terminate the motion at ECF No. 12.

Dated:    March 18, 2016                                SO ORDERED:
          White Plains, New York

                                                        _____
                                                        NELSON S. ROMÁN
                                                        United States District Judge